RECEIVED
SEP 16 2026
TWP. CLERK
MONROE TOWNSHIP

# SUMMONS

Attorney(s) M. James Maley, Jr.
Office Address 1150 Haddon Ave, Suite 210
Town, State, Zip Code Collingswood, NJ 08108

Telephone Number (856) 854-1515
Attorney(s) for Plaintiff Maley Givens, P.C.

Hexa Builders, LLC and
3043 Williamstown Urban Renewal, LLC
Plaintiff(s)

vs.

Mayor and Township Council of the
Township of Monroe
Defendant(s)

## Superior Court of New Jersey

Gloucester County
Civil Division
Docket No: GLO-L-1272-26

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

/s/ Michelle Smith
Clerk of the Superior Court

DATED: 09/16/2026

Name of Defendant to Be Served: Mayor and Township Council of the Township of Monroe

Address of Defendant to Be Served: 125 Virginia Avenue, Williamstown, NJ 08094

M. James Maley, Jr. (019561982)
jmaley@maleygivens.com
Erin E. Simone (01922003)
esimone@maleygivens.com
Nathan L. Milholin (384882023)
nmilholin@maleygivens.com
MALEY GIVENS, P.C.
1150 Haddon Avenue, Suite 210
Collingswood, NJ 08108
(856) 854-1515
Attorney for Plaintiffs

| | |
|---|---|
| HEXA BUILDERS, LLC AND 3043 WILLIAMSTOWN URBAN RENEWAL, LLC<br><br>Plaintiffs,<br><br>v.<br><br>MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF MONROE and PLANNING BOARD OF THE TOWNSHIP OF MONROE,<br><br>Defendants. | NEW JERSEY SUPERIOR COURT<br>LAW DIVISION<br>GLOUCESTER COUNTY<br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT IN LIEU OF PREROGATIVE WRIT** |

Plaintiffs, HEXA Builders, LLC and 3034 Williamstown Urban Renewal, LLC (collectively referred to as the "Plaintiff") by way of Complaint says:

## NATURE OF THE ACTION

1. This complaint in lieu of prerogative writs challenges the validity of Township Ordinance O:31-2026 ("Ordinance 31") and Township Ordinance O:32-2026 ("Ordinance 32") (collectively, the "Ordinances"), both amending Chapter 175 of the Code.

2. Plaintiff further challenges Township Ordinance O:27-2026 ("Ordinance 27"), adopted by the Township Council amending §175-157(A) of Chapter 175 of the Code to establish a large-scale structure setback requirement.

3. The Ordinances are *ultra vires*, were adopted without compliance with the mandatory procedural requirements of the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163 ("MLUL"), are void for vagueness, are arbitrary, capricious, and unreasonable, violate the fundamental fairness doctrine of Article I, Paragraph 1 of the New Jersey Constitution, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution, exceed the Township's constitutional zoning authority, were adopted without the notice required by the MLUL, and were adopted in violation of the square corners doctrine. Plaintiff further alleges that Ordinance 27 is likewise invalid for the reasons set forth in Count Eleven below.

## PARTIES

4. Plaintiff, HEXA Builders, LLC, is a New Jersey limited liability company, whose address is 502 Carnegie Center, Suite 105, Princeton, New Jersey 08540 (together with 3043 Williamstown Urban Renewal, LLC, "Plaintiff").

5. Plaintiff, 3043 Williamstown Urban Renewal, LLC, is a New Jersey urban renewal entity, created pursuant the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 et esq., whose address is 502 Carnegie Center, Suite 105, Princeton, New Jersey 08540 (together with HEXA Builders, LLC, "Plaintiff").

6. Defendant, Mayor and Township Council of the Township of Monroe is a municipal corporation having a mailing address at 125 Virginia Street, Williamstown, New Jersey 08094 (the "Township").

## JURISDICTION

7. Jurisdiction is appropriate under Rule 4:69-1, which authorizes the Law Division, Civil Part, of the Superior Court to review, hear and afford relief for actions designated as "In Lieu of Prerogative Writ."

8. Claims brought under 42 U.S.C. 1983 may also be brought in New Jersey State Court. Maisonet v. N.J. Dep't of Human Servs., Div. of Family Dev., 140 N.J. 214, 221 (1995).

9. Pursuant to N.J.S.A. 10:6-2(d), any party who has been deprived of the rights and privileges secured by the State or Federal Constitutions, or the laws of the United States or State of New Jersey may bring a cause of action under the New Jersey Civil Rights Act in the Superior Court of New Jersey.

## BACKGROUND

10. Owner owns property located at 3043 Black Horse Pike, Williamstown, New Jersey, also known as Block 8401, Lots 8, 9 and 10 on the official tax maps of the Township of Monroe in Gloucester County, New Jersey.

11. Pursuant to Rule 4:69-6(a), an action in lieu of prerogative writs to review the validity of a municipal ordinance must be commenced within forty-five (45) days after the accrual of the right to review.

12. Rule 4.69(c) permits enlargement of this 45-day period in the interest of justice.

13. The Township Council adopted Ordinance 31 and Ordinance 32 on second reading and final passage at a hearing held July 22, 2026, as stated in the Township's own notice of that adoption.

14. The Township's operative master plan, adopted December 22, 2022 (the "Master Plan"), superseded the Township's prior 2004 master plan in its entirety and is the master plan against which the Ordinances must be measured under N.J.S.A. 40:55D-62(a).

15. The Master Plan identifies several zones where light industrial, warehousing, and wholesale distribution uses are permitted or conditionally permitted, including the Regional Growth Commercial District, the Rural Development Commercial District, and the Business Park Zone ("BP Zone") which permits wholesale distribution and warehousing, community commercial, neighborhood commercial, and planned business and commercial uses, with light industrial uses permitted conditionally. (Master Plan at 44.)

16. The Master Plan sets forth, as Goal 8, an objective to "[s]upport commercial and industrial businesses by anticipating and adapting to changing uses, economies, and market demands," and lists among the objectives to that goal a direction to "[c]onsider performance and design standards in the siting or rezoning of industrial development to both **expand the locations of possible uses** and provide adequate safeguards to protect the environment and incompatible adjacent uses" and to "**[e]xpand and reconsider industrial use classifications** to align with modern industrial formats and uses." Master Plan at 31-32 (emphasis added).

17. The Master Plan further states that "the township should be prepared to regulate industry not on its traditional classification, but on the impact it has on the community," and that "[i]ndustrial zones may be best suited for those uses which cause harm or negatively impact neighbors, **where more modern industrial uses (technology, etc.) are permitted in a variety of zones**." Master Plan at 50 (emphasis added).

18. Ordinance 31 amends §175-157(A) of the Code of the Township of Monroe to add a new subsection (8), prohibiting the use, as a "primary or routine" energy source, of any fossil

fuel, petroleum product, biomass or combustible material, or nuclear powered generator, township-wide, subject to seven enumerated exceptions, and imposing escalating mandatory penalties of $500, $1,000, and $2,000, with each day of violation constituting a separate offense.

19. Neither "primary" nor "routine" is defined anywhere in Ordinance 31 or elsewhere in Chapter 175 of the Code of the Township of Monroe.

20. Ordinance 32 adds definitions to §175-11 of the Code of the Township of Monroe, including a definition of "Large Scale Commercial or Industrial Facility" as any permitted commercial or industrial use or development where the principal structure or structures contain more than two hundred thousand (200,000) square feet of gross floor area, including but not limited to warehouse, distribution, logistics, manufacturing, or other similarly intensive nonresidential uses, and establishes a new §175-163.5, entitled "Large Scale Commercial and Industrial Facilities," which by its own terms "shall apply to all Large Scale Commercial or Industrial Facilities." §175-163.5(B).

21. Section 175-163.5(C) provides that a Large Scale Commercial or Industrial Facility "shall be permitted as a conditional use within the Business Park (BP) Zone," and, as a condition of that use, requires that not less than seventy-five percent (75%) of the facility's power be supplied by on-site renewable generation (the "75% Mandate"), that the facility draw no more than 0.5% of the Township's total yearly water supply, and that the facility's traffic impact cause no reduction in the level of service on affected roadways, among other conditions.

22. Nothing in Ordinance 32 restricts Large Scale Commercial or Industrial Facilities to the BP Zone, however; several other zoning districts within the Township permit light industrial, warehousing, or wholesale distribution uses which could fall within the definition in Ordinance 32.

23. Page 45 of the Master Plan states "compatible residential, commercial, and industrial development is encouraged in or adjacent to areas already utilized for such purposes and to accommodate orderly regional growth."

24. Sections 175-163.5(D) through (O) of Ordinance 32 separately impose location, building design, bulk, submission, site design, stormwater, on-site power generation, operational, performance, signage, lighting, and parking requirements on a Large Scale Commercial or Industrial Facility, including a requirement that such a facility "take access from State Route 322," §175-163.5(D), a minimum lot area of 15 acres and minimum setbacks of 150 feet from all property lines and 1,000 feet from any residential use or other sensitive receptor, §175-163.5(F), and a prohibition on primary energy generation from fossil fuel, petroleum product, biomass, or nuclear sources, §175-163.5(J)(10).

25. On information and belief, the 75% Mandate, applied against the minimum lot area, setback, and coverage requirements of §175-163.5(F), renders compliance practically unattainable for a facility of the type and scale Ordinance 32 purports to regulate, such that the conditional use Ordinance 32 purports to permit is, in practical effect, foreclosed.

26. This Complaint is pled as a facial challenge to the Ordinances and does not presently allege as-applied facts specific to a particular property; such allegations may be added if Plaintiff elects to pursue an as-applied theory in addition to or in place of the facial claims below.

**COUNT ONE**
**(MASTER PLAN INCONSISTENCY, *ULTRA VIRES*, N.J.S.A. 40:55D-62(A) – ORDINANCE 32)**

27. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

28. N.J.S.A. 40:55D-62(a) requires that a zoning ordinance, and any amendment thereto, be substantially consistent with the land use plan element of the municipality's master plan, or designed to effectuate that plan element.

29. A valid zoning ordinance must advance a purpose of the MLUL, be substantially consistent with the land use and housing elements of the master plan, comport with constitutional constraints, and be adopted in accordance with statutorily mandated procedures. Griepenburg v. Township of Ocean, 220 N.J. 239, 253 (2015).

30. The concept of "substantially consistent" permits some degree of variance from a master plan, provided the variance does not substantially or materially undermine or distort the basic provisions and objectives of the master plan. Riya Finnegan LLC v. Township Council of South Brunswick, 197 N.J. 184, 195 (2008).

31. Goal 8 of the Master Plan directs the Township to expand and reconsider industrial use classifications to align with modern industrial formats and uses, and to consider performance and design standards, rather than outright exclusion, as the means of accommodating industrial development while protecting the environment and adjacent uses.

32. Rather than implementing Goal 8's directive through performance standards that expand the availability of modern industrial uses, Ordinance 32's 75% Mandate and its other conditional-use standards, on information and belief, render the "Large Scale Commercial or Industrial Facility" classification illusory in practical effect, foreclosing the very use the classification purports to conditionally permit in the BP Zone.

33. An ordinance that, in practical operation, forecloses the use that a master plan goal directs the Township to expand and accommodate does not effectuate that goal but instead

substantially undermines and distorts it, within the meaning of Riya Finnegan LLC, 197 N.J. at 195.

34. Ordinance 32 is accordingly neither substantially consistent with, nor designed to effectuate, the Master Plan, including Goal 8 and the Master Plan's discussion of industrial uses at page 50.

35. Thus, Ordinance 32 exceeds the authority delegated to the Township Council under the MLUL and is *ultra vires* and void.

**COUNT TWO**
**(FAILURE TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF N.J.S.A. 40:55D-62(A))**

36. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

37. Where a zoning amendment is not substantially consistent with the master plan, N.J.S.A. 40:55D-62(a) requires that it be approved by a majority of the full authorized membership of the governing body, with the reasons for so acting, including the reasons why the amendment departs from the master plan, set forth in a resolution and recorded in the minutes. Willoughby v. Planning Board of Township of Deptford, 306 N.J. Super. 266, 279 (App. Div. 1997).

38. Even where the procedural requirements of N.J.S.A. 40:55D-62(a) are technically satisfied, an ordinance may still be invalidated where the reasons stated for the departure from the master plan are conclusory, unsupported by the record, or fail to establish a reasonable relationship between the amendment and the objectives of the zoning ordinance. Riya Finnegan LLC v. Township Council of South Brunswick, 197 N.J. 184, 195 (2008).

39. On information and belief, the Township Council did not adopt the Ordinances by the vote required under N.J.S.A. 40:55D-62(a), and/or did not set forth adequate reasons for their departure from the Master Plan in the resolution or minutes accompanying adoption.

40. By reason of the foregoing, the Ordinances were adopted without compliance with the mandatory procedural requirements of N.J.S.A. 40:55D-62(a) and are void.

## COUNT THREE
## (VOID FOR VAGUENESS – ORDINANCE 31)

41. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

42. A municipal ordinance, particularly one carrying penal sanctions, must not be so vague that a person of ordinary intelligence is unable to discern what it requires, prohibits, or punishes. Brown v. City of Newark, 113 N.J. 565 (1989); see also N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 449 (2009).

43. Ordinance 31 imposes escalating mandatory monetary penalties for use of a generator as a "primary or routine" power source without defining either term, leaving persons of ordinary intelligence unable to determine what conduct is prohibited or to conform their conduct to the law.

44. By reason of the foregoing, Ordinance 31 is void for vagueness and violates the due process guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution.

## COUNT FOUR
## (VOID FOR VAGUENESS – ORDINANCE 32)

45. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

46. A municipal ordinance, particularly one governing a conditional use to which mandatory approval standards apply, must not be so vague that a person of ordinary intelligence, or the officials charged with enforcing it, is unable to discern what it requires, prohibits, or permits. Brown v. City of Newark, 113 N.J. 565 (1989).

47. Section 175-163.5(J)(1) of Ordinance 32 requires an applicant to "select, design, and locate the energy generation systems to limit noise, emissions, and visual impacts to adjacent and nearby uses as much as possible," and Section 175-163.5(J)(9) imposes the identical "as much as possible" standard for the siting of emergency energy generation systems, without defining what design or siting choices satisfy that standard or how compliance is to be measured.

48. Section 175-163.5(J)(8) of Ordinance 32 requires an applicant to demonstrate that its "procedures for fire suppression, containment, ventilation, and evacuation are sufficiently protective of public health, safety and welfare," without defining "sufficiently protective" or identifying any objective criterion by which sufficiency is to be judged.

49. Section 175-163.5(K)(2) of Ordinance 32 permits an alternative cooling system in place of the closed-loop system otherwise required, but only where the alternative "can be demonstrated to use less water and energy than closed-loop systems to the satisfaction of the Board engineer," committing the determinative standard to the unreviewable personal satisfaction of a single Township official rather than to any measurable benchmark.

50. Section 175-163.5(C)(6) of Ordinance 32 establishes maximum sound levels of 40 dB(A) and 50 dB(C) from 7:00 p.m. to 7:00 a.m. and 45 dB(A) and 60 dB(C) from 7:00 a.m. to

7:00 p.m., but Section 175-163.5(L)(1)(c) and (d) provide only that "[m]aximum dBA limitations" shall not apply during a power outage, for two hours after power is restored, or during routine testing and maintenance of backup generators, without stating whether the dB(C) limits established in the same section continue to apply during those same periods.

51. Section 175-163.5(J)(6)(b) of Ordinance 32 permits emergency generator use "during routine maintenance, or readiness testing for a short duration of time," without defining "short duration," notwithstanding that the same subsection elsewhere imposes an objective, numerical limit on the identical subject matter (a one-hundred-hour annual cap under Section 175-163.5(J)(6)(b), further restricted to the hours of 9:00 a.m. to 3:00 p.m., Monday-through-Friday, under Section 175-163.5(J)(6)(c)), demonstrating that the Township knew how to, and elsewhere did, draft an objective standard for the same conduct.

52. Section 175-163.5(B) provides that "[t]his section shall apply to all Large Scale Commercial or Industrial Facilities," without limitation to the BP Zone, while Section 175-163.5(C) separately provides that such a facility "shall be permitted as a conditional use within the Business Park (BP) Zone" and lists ten specific requirements, including the 75% Mandate, as conditions of that use; Ordinance 32 does not state whether Sections 175-163.5(D) through (O), including the Route 322 access requirement of Section 175-163.5(D), apply of their own force to a Large Scale Commercial or Industrial Facility located outside the BP Zone (including one that may otherwise be a permitted use in another zoning district), or apply only to a facility proceeding through the BP Zone conditional-use process described in Section 175-163.5(C), leaving both regulated persons and the Township's own officials unable to determine which of the section's requirements govern a facility sited outside the BP Zone.

53. The terms and structural ambiguities identified in the foregoing paragraphs, individually and collectively, fail to provide a person of ordinary intelligence, or the Township officials charged with enforcing and applying Ordinance 32, with any ascertainable standard by which compliance can be measured, and vest Township officials with standardless discretion to grant, deny, or condition approval, or to determine what conduct is lawful, on a case-by-case and official-by-official basis.

54. For the foregoing reasons, Ordinance 32 is void for vagueness and violates the due process guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution.

**COUNT FIVE**
**(ARBITRARY, CAPRICIOUS, AND UNREASONABLE – FAILURE TO PROVIDE CLEAR AND OBJECTIVE STANDARDS – ORDINANCE 32)**

55. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

56. A conditional-use ordinance must set forth standards that are clear, particular, and objective; a municipality may not use conditional-use approval as a vehicle for subjective administrative discretion. Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241 (1971).

57. Ordinance 32 employs numerous subjective, non-objective standards, including but not limited to "as much as possible," "sufficiently protective," and "to the satisfaction of the Board engineer," which vest Township officials with unbridled discretion in violation of N.J.S.A. 40:55D-67(a).

58. A zoning regulation must be reasonably designed to resolve the problem it addresses without imposing unnecessary and excessive restrictions on the use of private property,

and the means-ends relationship between a zoning standard and its stated purpose may not be illusory. Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282, 290-91, 293-94 (2001).

59. On information and belief, the 75% Mandate is practically unattainable when applied against the 15-acre minimum lot area, 150-foot general setback, 1,000-foot sensitive-receptor setback, and 40%/50% building and impervious coverage limits of Section 175-163.5(F), such that the means-ends relationship between the 75% Mandate and Ordinance 32's stated purposes is illusory within the meaning of Pheasant Bridge.

60. 57. A zoning ordinance is entitled to a presumption of validity, and a challenger must affirmatively show that it is clearly arbitrary, capricious, or unreasonable, or plainly contrary to fundamental zoning principles or the enabling statute. Bow & Arrow Manor, Inc. v. Town of West Orange, 63 N.J. 335 (1973). Plaintiff alleges that the practical unattainability of the 75% Mandate, together with the ordinance's other subjective and unattainable standards, meets that burden and removes Ordinance 32 from the protection of the "fairly debatable" doctrine.

61. The Township already has existing standards to address many of these issues, but instead chose to impose harsher standards on large scale commercial and industrial uses. E.g., Section 175-91 of the Code regulates air quality and requires compliance with federal Clean Air Act and N.J.A.C. 7: 27-18.3 and 7: 27 et seq.; Section 175-99 addresses energy conservation; 175-101 and -102 address fire hazards and fire protection; Section 175-176 addresses glare, heat, radioactivity, vibrations, emissions, noise storage and waste disposal.

62. In all nonresidential, nonagricultural districts in the Township, noise standards are 65 decibels pursuant to Section 175-126G.(2) of the Code. However for Large Scale Commercial and Industrial Facilities, the standard is instead 40 decibels at night and 60 decibels during the day.

63. There is no rational basis to treat noise from a Large Scale Commercial and Industrial Facility more restrictively than any other commercial or industrial use.

64. For the foregoing reasons, Ordinance 32 is arbitrary, capricious, and unreasonable and is void.

**COUNT SIX**
**(VIOLATION OF THE FUNDAMENTAL FAIRNESS DOCTRINE – ORDINANCE 32)**

65. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

66. Article I, Paragraph 1 of the New Jersey Constitution encompasses a doctrine of fundamental fairness that protects citizens generally against unjust and arbitrary governmental action, including government procedures that operate arbitrarily. Oberhand v. Director, Division of Taxation, 193 N.J. 558, 578-79 (2008) (Albin, J., concurring).

67. The fundamental fairness doctrine protects against arbitrary interference with the right to own and enjoy property, a right the New Jersey Constitution enshrines among the natural and unalienable rights of its citizens. Winberry Realty Partnership v. Borough of Rutherford, 247 N.J. 165, 185 (2021); N.J. Const. art. I, ¶ 1.

68. It is basic to zoning, as to every exercise of the police power, that it be contained by the rule of reason, such that the exertion of municipal authority may not go beyond the public need or impose unnecessary and excessive restrictions on the use of private property. Katobimar Realty Co. v. Webster, 20 N.J. 114, 122 (1955).

69. "[T]he means selected must have real and substantial relation to the object sought to be attained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not partake of the offensive

character of those which cause the problem sought to be ameliorated." Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 290 (2001).

70. The fundamental question in all zoning cases is whether the requirements of the ordinance are reasonable under the circumstances. Riya Finnegan LLC v. Township Council of South Brunswick, 197 N.J. 184, 195 (2008).

71. On information and belief, no evidentiary showing supports a conclusion that the public need addressed by Ordinance 32 requires standards as restrictive as the 75% Mandate, the 1000-foot set-back requirement, noise restrictions, or vibration restrictions, as opposed to less restrictive performance standards of the kind Goal 8 of the Master Plan contemplates and as appear elsewhere in the Code.

72. By imposing a conditional-use standard that, on information and belief, forecloses in practical effect the very use it purports to permit, without a showing that less restrictive standards would be inadequate to address the Township's stated concerns, Ordinance 32 imposes an unnecessary and excessive restriction on the use of private property in violation of the fundamental fairness doctrine.

73. By reason of the foregoing, Ordinance 32 violates Article I, Paragraph 1 of the New Jersey Constitution and is void.

## COUNT SEVEN
## (EXCEEDING CONSTITUTIONAL ZONING AUTHORITY – DE FACTO TOTAL PROHIBITION)

74. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

75. Article IV, Section VI, Paragraph 2 of the New Jersey Constitution authorizes the Legislature to permit municipalities to adopt zoning ordinances "limiting and restricting to

specified districts and regulating therein" the use of land and structures; it does not authorize the outright exclusion of a legitimate use from all property in the municipality. First Church of Christ, Scientist v. Board of Adjustment, 127 N.J.L. 325, 327 (1941).

76. A municipality has only those powers of zoning granted to it by the Legislature, and the MLUL, consistent with this constitutional limitation, authorizes a municipality to limit and restrict and to regulate the nature and extent of the use of land, not to ban a use outright. Fred v. Mayor and Council of Borough of Old Tappan, 10 N.J. 515, 518 (1952); N.J.S.A. 40:55D-2(g); N.J.S.A. 40:55D-65(a).

77. On information and belief, the 75% Mandate and Ordinance 32's other conditional-use standards, applied against the physical characteristics of parcels within the BP Zone, do not merely limit or restrict the "Large Scale Commercial or Industrial Facility" use but render it, in practical effect, unavailable anywhere the ordinance purports to permit it.

78. Section 175-163.5(D) independently requires that any Large Scale Commercial or Industrial Facility "take access from State Route 322," and, because Section 175-163.5(B) states that "this section shall apply to all Large Scale Commercial or Industrial Facilities" without limitation to the BP Zone, that access requirement, read together with Section 175-163.5(B), operates to exclude the use from any parcel in the Township, in any zoning district, that cannot access Route 322, regardless of whether the use is otherwise a permitted or conditionally permitted use in that district.

79. The 1000-foot setback requirement from "Sensitive Receptors" essentially precludes development of a Large Scale Facility on many parcels, as the required setback far exceeds the minimum lot widths and depths for any zoning district in the Township, the largest of which is 400 feet.

80. The setback is even more onerous when combined with the requirement that Large Scale Facilities have direct ingress and egress to Route 322.

81. A conditional-use standard that forecloses in practical effect the entire use it purports to permit, or a locational requirement that, read together with the section's own applicability clause, excludes the use from every parcel in the Township save those able to access a single state highway, functions as a de facto total prohibition of that use rather than a limitation or restriction of it within a specified district, and exceeds the zoning authority delegated to the Township under Article IV, Section VI, Paragraph 2 of the New Jersey Constitution and the MLUL.

82. Ordinance 32 thus exceeds the Township's constitutional and statutory zoning authority and is void.

## COUNT EIGHT
## (FAILURE TO PROVIDE ADEQUATE NOTICE – ORDINANCE 32)

83. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

84. N.J.S.A. 40:55D-15(a) requires notice of a hearing on the adoption of a development regulation to be given to the clerk of any adjoining municipality where the affected property is situated within two hundred feet of that municipality, and N.J.S.A. 40:55D-15(b) requires notice of such a hearing to be given to the county planning board.

85. N.J.S.A. 40:55D-62.1 requires notice of a proposed amendment to a zoning ordinance that changes the classification or boundaries of a zoning district, other than a change made pursuant to a periodic reexamination of the master plan, to be given to affected property owners within the district and to the Office of Planning Advocacy.

86. A change to the uses permitted within a zoning district, including a change to conditionally permitted uses, constitutes a change in the classification of a zoning district for purposes of N.J.S.A. 40:55D-62.1, because such a change has the capacity to fundamentally alter the character of the district. Robert James Pacilli Homes, L.L.C. v. Township of Woolwich, 394 N.J. Super. 319, 330-31 (App. Div. 2007).

87. Ordinance 32 establishes a new conditionally permitted use, the "Large Scale Commercial or Industrial Facility," within the BP Zone, together with an extensive set of use-specific standards, and thereby effects a change to the classification of the BP Zone within the meaning of N.J.S.A. 40:55D-62.1.

88. On information and belief, the Township did not provide notice of the hearing on Ordinance 32 to the clerk of any adjoining municipality as required by N.J.S.A. 40:55D-15(a), to the Gloucester County Planning Board as required by N.J.S.A. 40:55D-15(b), to the Office of Planning Advocacy as required by N.J.S.A. 40:55D-62.1, or to property owners within the BP Zone affected by the change in classification as required by N.J.S.A. 40:55D-62.1.

89. Ordinance 32 was thus adopted without compliance with the notice requirements of the MLUL and is void.

## COUNT NINE
## (VIOLATION OF THE SQUARE CORNERS DOCTRINE – ORDINANCE 32)

90. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

91. In dealing with the public, government must "turn square corners," a principle originating with Justice Holmes and requiring that governmental entities deal forthrightly and fairly with citizens. Rock Island, Arkansas & Louisiana Railroad Co. v. United States,

254 U.S. 131, 143 (1920); SSI Medical Services, Inc. v. State, Department of Human Services, 284 N.J. Super. 184, 187-88 (App. Div. 1995), aff'd, 146 N.J. 614 (1996).

92. Bad faith is not required to establish a violation of the square corners doctrine; the doctrine applies whenever a governmental entity fails to deal forthrightly with those it regulates or seeks to exploit an unfair advantage over them. CBS Outdoor, Inc. v. Borough of Lebanon Planning Board/Board of Adjustment, 414 N.J. Super. 563, 586-87 (App. Div. 2010); Citizens for Equity v. New Jersey Department of Environmental Protection, 126 N.J. 391, 397 (1991).

93. The square corners doctrine has been applied against the Township in analogous circumstances and "cannot be applied with rigidity or undue technicality," remaining "always subject to the guiding principles of fundamental fairness." Waterside Villas Holdings, LLC v. Monroe Township, 434 N.J. Super. 275, 287 (App. Div. 2014).

94. On information and belief, Ordinance 32 was presented to the public and to affected property owners as a conditional-use ordinance that would permit "Large Scale Commercial or Industrial Facilities" in the BP Zone upon satisfaction of specified standards, while the 75% Mandate and the ordinance's other standards, in practical effect, foreclose the very use the ordinance purports to permit.

95. A governmental body does not deal forthrightly with the persons it regulates when it presents a use as conditionally available while structuring the applicable conditions so that the use cannot, in practical effect, be achieved.

96. Ordinance 32 was thus adopted in violation of the square corners doctrine embodied in Article I, Paragraph 1 of the New Jersey Constitution and is void.

## COUNT TEN

## (§1983 EQUAL PROTECTION – ORDINANCE 31 AND ORDINANCE 32)

97. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

98. The Fourteenth Amendment to the United States Constitution prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, and Article I, Paragraph 1 of the New Jersey Constitution provides protection analogous to the Fourteenth Amendment's equal protection guarantee. Secure Heritage, Inc. v. City of Cape May, 361 N.J. Super. 281, 299 (App. Div. 2003).

99. An equal protection claim may be sustained where a zoning ordinance treats similarly situated uses differently and there is no legitimate governmental purpose for the differential treatment. County Concrete Corp. v. Township of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006).

100. Ordinance 32 defines a "Large Scale Commercial or Industrial Facility" solely by reference to a two-hundred-thousand-square-foot gross-floor-area threshold, without regard to the actual water consumption, energy demand, noise generation, traffic generation, or other impact of the specific use proposed, so that every facility meeting that threshold, regardless of where in the Township it is located, is treated as a member of the same regulated class.

101. Section 175-163.5(B) provides that "[t]his section shall apply to all Large Scale Commercial or Industrial Facilities," without limitation to any particular zoning district, while Section 175-163.5(C) separately provides that a Large Scale Commercial or Industrial Facility "shall be permitted as a conditional use within the Business Park (BP) Zone" and, as conditions of that use alone, imposes the 75% Mandate, the 0.5% cap on the Township's water supply, the

requirement that the facility's traffic impact cause no reduction in the level of service, the sound-level limits of Section 175-163.5(C)(6), the illumination cap of Section 175-163.5(C)(7), and the wastewater testing and reporting plan of Section 175-163.5(C)(10).

102. Because Sections 175-163.5(C)(1) through (10) are, by their own terms, conditions of the conditional use permitted "within the Business Park (BP) Zone," a Large Scale Commercial or Industrial Facility that is permitted or conditionally permitted as an industrial or light industrial use located outside the BP Zone is ***not*** subject to the 75% Mandate, the water-supply cap, the traffic level-of-service standard, the Section 175-163.5(C)(6) sound limits, or the wastewater testing plan, but is instead subject only to the far less exacting standards for a conditionally permitted "light industrial" use pursuant to Section 175-160D(2) and, depending on the zone district, Section 175-161.6A(2)(d).

103. Two facilities of identical size, water consumption, energy demand, noise generation, and traffic generation are accordingly subject to materially different regulatory burdens under Ordinance 32 depending solely on which zoning district contains the parcel: a facility in the BP Zone must satisfy the water, energy, traffic, noise, and wastewater conditions of Section 175-163.5(C), while an identically sized and identically impactful facility located elsewhere in the Township need not, without any showing that location within the BP Zone, as opposed to any other zoning district, bears a rational relationship to the water, energy, noise, or traffic impacts that Section 175-163.5(C)'s conditions purport to address.

104. There is no rational purpose for making the water, energy, traffic, noise, and wastewater standards apply only within the BP Zone, given the stated reasons for enactment of Ordinance 32 and the definition of Large Scale Commercial or Industrial Facility therein.

105. Ordinance 31 exempts "[a]gricultural operations" and "[c]ritical public infrastructure and public safety facilities, including police, fire, emergency medical, water treatment, wastewater treatment, and similar governmental facilities" from its restrictions on fossil fuel, petroleum product, biomass, and nuclear generators in their entirety, without regard to the volume of generator use, emissions, or other environmental impact such uses may generate, notwithstanding that the Master Plan itself recognizes agricultural use as a substantial consumer of water and other natural resources within the Township.

106. Additionally, Ordinance 31 prohibits all fossil-fuel-powered generators, petroleum-powered generators, biomass or combustible generators, and nuclear-powered generators, without regard for whether those generators create net greenhouse gas emissions or co-pollutant emissions, while allowing other forms of generators that may have the same or worse net greenhouse gas emissions and net co-pollutant emissions.

107. There is no rational basis to treat these generators differently when the impact is the same: net-zero greenhouse gas emissions and net co-pollutant emissions.

108. On information and belief, the 75% Mandate in Ordinance 32 and the generator restrictions of Ordinance 31 were calibrated, in substantial part, to reach a specific class of use commonly associated with large-scale data processing and storage facilities, rather than adopted pursuant to a use-neutral, impact-based assessment of the broader class of facilities the Ordinances in fact regulate.

109. A zoning ordinance fails equal protection scrutiny when it is based on animus toward a particular class of use or a fear unsubstantiated by factors properly cognizable in a zoning proceeding. Congregation Kol Ami v. Abington Township, 309 F.3d 120, 135 (3d Cir. 2002).

110. There is no rational purpose for regulating a "Large Scale Commercial or Industrial Facility" differently based on floor area alone, on which zoning district contains the parcel, or on the categorical exemptions of Ordinance 31, where the actual impacts the Ordinances purport to address (water consumption, noise, emissions, energy demand, and traffic) bear no necessary relationship to any of those three lines of classification.

111. By reason of the foregoing, Ordinance 31 and Ordinance 32 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution and are void.

**COUNT ELEVEN**
**(LEGALLY INSUFFICIENT NOTICE – ORDINANCE 27)**

112. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth at length herein.

113. On May 27, 2026, the Township Council introduced Ordinance 27, entitled "An Ordinance of the Township of Monroe, County of Gloucester, State of New Jersey, Amending Chapter 175 ('Land Use and Development') of the Township Code to Establish a Large-Scale Structure Setback Requirement and to Create Additional Buffering Standards Between Intensive Nonresidential Uses and Residential, Institutional, and Recreational Uses," adding a new §175-157(A)(7) to the Code.

114. Ordinance 27 requires that any principal structure containing more than two hundred thousand (200,000) square feet of gross floor area, including warehouse, distribution, logistics, and manufacturing uses, maintain a minimum setback of one thousand (1,000) feet from any residential, institutional, or recreational use, township-wide and without regard to the zoning district that the residential, institutional, or recreational use falls within.

115. On information and belief, based on the Township's own public notice of the first reading of Ordinance 27, the Township Council scheduled the public hearing and final vote on Ordinance 27 for June 24, 2026.

116. The Township's public notice of the second reading and final adoption of Ordinance 27 states that the Township Council adopted Ordinance 27 "at a final hearing held on May 24, 2026," a date that precedes by four days the May 28, 2026 publication of the Township's own notice of Ordinance 27's first reading and introduction, and that is accordingly impossible on the face of the Township's own public notices, since a first reading and its accompanying notice necessarily precede a second reading and final adoption of the same ordinance.

117. On information and belief, the Township Council in fact adopted Ordinance 27 at a final hearing held June 24, 2026, consistent with the hearing date scheduled in the Township's first-reading notice, and the "May 24, 2026" date appearing in the Township's second-reading and final-adoption notice is a clerical error.

118. The Township's June 24, 2026 agenda lists Ordinance 27 for Second Reading and Adoption.

119. The Township's May 27, 2026 agenda lists Ordinance 27 for its First Reading

120. Because the Township's own notice of adoption misstates, on its face, the very date from which the forty-five-day period to challenge Ordinance 27 under R. 4:69-6(a) would run, that notice did not place a person of ordinary diligence on adequate notice of when the right to challenge Ordinance 27 accrued, and this Court should enlarge the time to challenge Ordinance 27 in the interest of justice pursuant to R. 4:69-6(c), in light of the Township's own notice defect and the substantial public importance of the matters at issue in this action.

**COUNT TWELVE**
**(INCONSISTENCY WITH THE MASTER PLAN AND ARBITRARY AND UNREASONABLE ZONING REGULATION – ORDINANCE 27)**

121. Approximately one month after adopting Ordinance 27, and while Ordinance 27 remained subject to challenge, the Township Council adopted Ordinance 32, which applies to the identical class of structure (any facility exceeding two hundred thousand square feet of gross floor area) and independently imposes a 1,000-foot setback from residential uses and sensitive receptors under §175-163.5(F)(4)(d), together with a separate, general 150-foot setback from all property lines under §175-163.5(F)(3) and a 100-foot landscape buffer under §175-163.5(H)(5).

122. Ordinance 27's blanket, township-wide 1,000-foot setback requirement fails to account for the character of each district and its peculiar suitability for particular uses, as N.J.S.A. 40:55D-62(a) requires.

123. Moreover, on information and belief, the 1,000-foot setback renders facilities of the type that Ordinance 27 purports to regulate practically unbuildable anywhere within the Township.

124. Further, Ordinance 27 is not substantially consistent with, nor designed to effectuate, the Master Plan, including Goal 8's direction to expand and accommodate modern industrial uses through performance and design standards, rather than create uniform exclusionary setbacks.

125. The Township's own subsequent adoption, one month later, of a more differentiated, zone-specific setback and buffering scheme in Ordinance 32, applicable to the same class of facility, demonstrates that a uniform, undifferentiated township-wide setback was neither necessary nor consistent with the reasonable consideration to the character of each district that N.J.S.A. 40:55D-62(a) requires.

126. For the forgoing reasons, Ordinance 27 is arbitrary, capricious, and unreasonable, is not substantially consistent with nor designed to effectuate the Master Plan and should be declared void.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants:

(a) Declaring Ordinance 31
  (i) *void ab initio*,
  (ii) arbitrary, capricious and unreasonable,
  (iii) unconstitutional, or
  (iv) otherwise contrary to law; and

(b) Declaring Ordinance 32
  (i) *void ab initio*,
  (ii) arbitrary, capricious and unreasonable,
  (iii) unconstitutional, or
  (iv) otherwise contrary to law; and

(c) Declaring Ordinance 27
  (i) *void ab initio*,
  (ii) arbitrary, capricious and unreasonable,
  (iii) unconstitutional, or
  (iv) otherwise contrary to law; and

(d) Enjoining Defendants, their officers, agents, and employees, from enforcing Ordinance 31 and Ordinance 32, and Ordinance 27; and

(e) Awarding Plaintiff the costs of suit; and

(f) Granting such other and further relief as the Court deems equitable and just.

**MALEY GIVENS, P.C.**

Dated: September 8 2026

By: ______________________
M. JAMES MALEY, JR.
Attorneys for Plaintiff

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, M. James Maley, Jr., Esq. is hereby designated as trial counsel on behalf of Plaintiff.

**MALEY GIVENS, P.C.**

Dated: September 8 2026

By: ______________________
M. JAMES MALEY, JR.
Attorneys for Plaintiff

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to Rule 4:5-1, it is hereby stated that the matter in controversy is not the subject of any other action pending in court or any pending arbitration proceeding. The parties hereto are also parties in other pending litigation, HEXA Builders, LLC v. Mayor and Township Council of the Township of Monroe, which is currently pending under Docket No. 1:26-cv-8284 in the United States District Court for the District of New Jersey. We know of no other parties that should be joined in the above action.

**MALEY GIVENS, P.C.**

Dated: September 8 2026

By: ______________________
M. JAMES MALEY, JR.
Attorneys for Plaintiff

**CERTIFICATION PURSUANT TO RULE 4:69-4**

I certify that all necessary transcripts of local agency proceedings in the cause of action have been ordered as required by the New Jersey Court Rules.

**MALEY GIVENS, P.C.**

Dated: September 8 2026

By: ______________________
M. JAMES MALEY, JR.

Attorneys for Plaintiff

**CERTIFICATION PURSUANT TO RULE 1:38-7(c)**

I certify that confidential personal identifiers have been redacted from documents submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**MALEY GIVENS, P.C.**

Dated: September 8 2026

By: ______________________
M. JAMES MALEY, JR.
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL (R. 4:35-1)**

Plaintiff hereby demands trial by jury on all issues herein pursuant to R.1:8-2(b) and R.4:35-1(a).

**MALEY GIVENS, P.C.**

Dated: September 8 2026

By: ______________________
M. JAMES MALEY, JR.
Attorneys for Plaintiff

# Civil Case Information Statement

**Case Details: GLOUCESTER | Civil Part Docket# L-001272-26**

**Case Caption:** HEXA BUILDERS, LLC VS MAYOR AND TOWNSHIP C OUNC
**Case Initiation Date:** 09/08/2026
**Attorney Name:** MAURICE MALEY JR
**Firm Name:** MALEY GIVENS PC
**Address:** 1150 HADDON AVE STE 210 COLLINGSWOOD NJ 081082003
**Phone:** 8568541515
**Name of Party:** PLAINTIFF : HEXA BUILDERS, LLC
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** ACTIONS IN LIEU OF PREROGATIVE WRITS
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** YES
**If yes, list docket numbers:** 26-cv-08284-ESK-EAP
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: HEXA BUILDERS, LLC? NO**

**Are sexual abuse claims alleged by: 3043 WILLIAMSTOWN URBAN RENEWA? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain) REDEVELOPMENT

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/08/2026
Dated

/s/ MAURICE MALEY JR
Signed

GLOUCESTER COUNTY CIVIL DIVISION
70 HUNTER STREET
WOODBURY, NJ 08096-0000

**SUPERIOR COURT OF NEW JERSEY**
**GLOUCESTER COUNTY**
Telephone: (856) 878-5050 X 15370

**PROCEEDING DATE SCHEDULED**

09/14/2026

CASE CAPTION: HEXA BUILDERS, LLC VS MAYOR AND TOWNSHIP C OUNC

CASE NUMBER: GLO-L-001272-26

A Case Management Conference is scheduled for this case on 10/08/2026 at 09:00 AM. Before Judge BENJAMIN C TELSEY

Please report to: Court Room VIDEO.

Contact the court for details on whether the proceeding will be held by video, phone, or paper.

# ELIGIBLE PARTIES AND/OR ATTORNEYS

| | |
|---|---|
| MAURICE MALEY | Plaintiff Attorney |
| MAURICE MALEY | Plaintiff Attorney |
| MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF MONR OE | Defendant |

New Jersey Courts
Independence • Integrity • Fairness • Quality Service

Cumberland/Gloucester/Salem Vicinage

**Benjamin C. Telsey**
**Assignment Judge**

Gloucester County Justice Complex • 70 Hunter St • Woodbury, NJ 08096 njcourts.gov • Tel: 856-878-5050• Fax: 856-379-2475

September 14, 2026

FILED VIA E-COURTS

Docket No.: GLO-L-1272-26
HEXA BUILDERS, LLC and 3043 WILLIAMSTOWN URBAN RENEWAL, LLC V. MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF MONROE and PLANNING BOARD OF THE TOWNSHIP OF MONROE.

Counsel,

This letter is to confirm that the Court is in receipt of Plaintiff's Complaint in the above captioned matter. Pursuant to Rule 4:69, a case management conference shall occur virtually on **Thursday, October 8, 2026, at 9:00 a.m., via Zoom.** At least five days in advance of the conference, each party shall submit a statement of factual and legal issues, as well as an exhibit list.

Please contact chambers with any questions or concerns.

Sincerely,

Ethan Adams
Law Clerk to the Honorable Benjamin C. Telsey, A.J.S.C.
ethan.adams@njcourts.gov
Office: (856) 878-5050 ext. 15811
Fax: (856) 686-7521